IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERESA and RUSTY R., individually and
as parents of their minor child, PATRICK R.,

OPINION AND ORDER

Plaintiffs,

08-cv-427-bbc

v.

MADISON METROPOLITAN SCHOOL
DISTRICT,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The procedural and factual background of this Individuals with Disabilities Education Act lawsuit already has been discussed in the court's previous summary judgment order, dkt. #34, and need not be repeated. The summary judgment order left one issue unresolved: whether plaintiffs Teresa and Rusty R. are the "prevailing parties," dkt. #34 at 32, and if so, what amount would constitute reasonable attorney fees that the court in its discretion could order defendant Madison Metropolitan School District to pay. 20 U.S.C. §§ 1415(i)(3)(B)-(G); Wis. Stat. § 115.80(9).

Defendant Madison Metropolitan School District does not deny that plaintiffs "prevailed in part in the proceedings and are eligible for some attorney's fee award." Dft.'s

1

Br., dkt. #41, at 4. Although plaintiffs did not obtain reimbursement for Patrick's entire tuition for attending the Little Red Preschool as requested, they did obtain reimbursement for a portion of the tuition. By obtaining partial reimbursement, plaintiffs became a prevailing party because they were successful "'on a[] significant issue in [the] litigation [that] achieve[d] some of the benefit [plaintiffs] sought in brining suit.'" T.D. v. La Grange School District No. 102, 349 F.3d 469, 479 (7th Cir. 2003) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Therefore, the remaining issue is whether the attorney fees requested by plaintiffs are reasonable.

Under the Individuals with Disabilities Education Act, "the court, in its discretion, may award *reasonable* attorneys' fees as part of the costs - - to a prevailing party who is the parent of a child with a disability[.]" 20 U.S.C. § 1415(i)(3)(B)(i)(I) (emphasis added). The starting point in determining whether fees are reasonable is calculating the lodestar amount by multiplying the reasonable number of hours worked by the market hourly rate. Gautreaux v. Chicago Housing Authority, 491 F.3d 649, 659 (7th Cir. 2007). (Although some of the case law, including Gautreaux, addresses the reasonableness of attorney fees in prevailing party fee-shifting statutes in the context of different federal fee-shifting statutes, such as 42 U.S.C. § 1988, the Court of Appeals for the Seventh Circuit has recognized that the Individuals with Disabilities Education Act's fee-shifting language should not be "interpreted any differently from other prevailing party fee-shifting statutes." T.D., 349

2

F.3d at 476.)

Plaintiffs request attorney fees and costs in the amount of $26,379.70. Plaintiffs' amount is based on the following: (1) the 84.1 hours that attorney Jeffrey Spitzer-Resnick spent on the case at a rate of $295 an hour; (2) paralegal Pat Kelly's attendance at the administrative hearing for 8 hours at a rate of $80 an hour; (3) law clerk Laurie Mlatawou's expenditure of 15 hours on the case at a rate of $40 an hour; and (4) $330.20 in costs. As the party seeking attorney fees, plaintiffs have the burden of justifying their requests. Spellan v. Board of Education for District 111, 59 F.3d 642, 646 (7th Cir. 1995) (citing Hensley, 461 U.S. at 437). Defendant raises several challenges regarding plaintiffs' lodestar amount. First, defendant contends that plaintiffs should not recover fees for the time plaintiffs' attorney spent communicating with the press about the case because that time was not used on an activity required for legal services in the litigation. I agree. Communicating with the press was not work "reasonably calculated to result in relief," Gautreaux, 491 F.3d at 661-62, and plaintiffs have failed to prove otherwise. Thus, the 3.4 hours plaintiffs' attorney spent communicating with the press will be removed from the lodestar amount.

Defendant also contends that the attendance of paralegal Kelly at the administrative hearing was "an unnecessary duplication of effort" for which fees should not be recoverable because its lawyer did not use a paralegal at the hearing. However, defendant's argument is not supported by any evidence other than an unpersuasive "because we say so" statement.

3

Plaintiffs' attorney's decision to have his paralegal attend and help him with the hearing is a tactical decision that does not appear unreasonable. Thus, the hours charged for Kelley's attendance at the hearing are reasonable hours included in the lodestar amount.

Furthermore, defendant challenges the hourly rate charged by both plaintiffs' attorney and the attorney's paralegal. An attorney's actual billing rate is presumptively reasonable. People Who Care v. Rockford Board of Education, School District No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996) (citing Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993)). However, to prove his actual billing rate, the attorney must "do more than merely request an hourly rate; he must present evidence to establish that the requested rate is his actual billing rate." Id. at 1311. If the attorney's true billing rate is uncertain, the court should look to the "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); see also, People Who Care, 90 F.3d at 1311 (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)) (in determining market rate court should look to "the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'"). Furthermore, "'the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community.'" Connolly v. National School Bus Service, Inc., 177 F.3d 593, 596 (7th Cir. 1999) (citing Blum, 465 U.S. at 895 n.11). If the fee applicant provides such evidence, then

4

the burden shifts to defendant to prove that there is a good reason why a lower rate is essential. Connolly, 177 F.3d at 596 (citations omitted).

In this case, plaintiffs submitted two affidavits in support of their rates, one from the attorney and another from a Milwaukee lawyer who also works in the area of special education law. In his own affidavit, plaintiffs' attorney merely states that the hourly rates were established by his employer, Disability Rights Wisconsin, on the basis of the rates of similarly experienced legal professionals in the Madison and Milwaukee areas. This affidavit does not provide enough evidence to prove that his actual billing rate is $295 or that his paralegal's actual billing rate is $80. Nowhere does plaintiffs' attorney state that those rates are what clients are actually billed. In fact, there is no evidence of what billing arrangement plaintiffs have with their attorney. Because plaintiffs' attorney's actual billing rate is uncertain, it is proper to look to the rates prevailing in the community.

As evidence of community rates, plaintiffs provided one affidavit of a federal special education law attorney in private practice in Milwaukee, Lynn Novotnak. Attorney Novotnak's affidavit states that over the last 16 years her practice has focused on civil rights matters including federal special education law and that she charges clients $275 an hour and that her firm charges $50 an hour for paralegal work. Her affidavit also states that it is her opinion that plaintiffs' attorney's rates are reasonable. However, Novotnak's affidavit does not support plaintiffs' contention that their attorney's rates are comparable to

5

community rates.

First, Novotnak practices in Milwaukee, not Madison. There is no evidence that the billing rates in the Milwaukee legal community are the same as the rates in Madison. Second, even assuming that the rates are the same in both communities, Novotnak's rates are less than plaintiffs' attorney's rates. Although plaintiffs' attorney has been practicing law for 24 years and Novotnak has been practicing for 27 years, plaintiffs' attorney's rate is $20 higher. Further, Novotnak's firm's paralegal rate is $30 less than plaintiffs' attorney's paralegal rate. Finally, Novotnak's statement that plaintiffs' attorney's rate is reasonable is somewhat suspect considering the statement is prefaced by facts that are not true to this lawsuit: "Given . . . the level of complexity involved in litigating a major class action law suit brought under state and federal special education law, the Americans with Disabilities Act, and Sec. 504 of the Rehabilitation Act, it is my opinion that the hourly rates sought by plaintiffs' counsel are reasonable[.]" Novotnak Aff., dkt. #39, at 3. Plaintiffs' lawsuit was not a class action and did not involve either the Americans with Disabilities Act or the Rehabilitation Act. Thus, Novotnak's affidavit does not support plaintiffs' contention that their attorney's rate is the market rate but supports the conclusion that a reasonable market rate is lower.

Defendant also points to the $265 hourly rate recently awarded to plaintiffs' attorney in a different and more complicated federal special education law case in support of its

6

contention that a $295 hourly rate is not reasonable. In Jamie S. v. Milwaukee Board of School Directors, No. 01-C-928, 2008 WL 3852663 at *3-*4 (E.D. Wis. Aug. 15, 2008), plaintiffs' attorney contended that $265 fees rate was a reasonable hourly rate. In Jamie S., plaintiffs' attorney submitted two affidavits in support of his fee request, his own personal affidavit and an affidavit from attorney Novotnak. (The fact that Novotnak submitted an affidavit in Jamie S. helps explain why her affidavit in the case before this court refers to a class action because Jamie S. was a class action. It seems that plaintiffs' attorney merely submitted the same affidavit in both cases.) In Jamie S., the court found that even though Novotnak's affidavit established that she billed at a lower rate than plaintiffs' attorney, his rate was reasonable because "the present class action has been exceptionally complex and has required an extra degree of expertise and skill in its prosecution."

Here, plaintiffs' case was not a class action or exceptionally complex, yet plaintiffs' attorney contends that he is entitled to $30 more an hour than he was asking for in Jamie S. Plaintiffs have failed to provide any evidence to support their contention that an hourly rate of $295 is the market rate for lawyers in the Madison community with reasonably comparable skill, experience and reputation. Instead, the evidence supports a finding that a lawyer with reasonably comparable skill, experience and reputation charges between $265 and $275 an hour. Thus, plaintiffs' attorney's rate will be reduced from $295 an hour to $275 an hour. Furthermore, there is no evidence from which to find that a paralegal rate

7

of $80 an hour is a reasonable prevailing market rate. Novotnak's affidavit and the paralegal rate plaintiffs' attorney obtained in Jamie S. supports a reasonable prevailing market rate of $50 an hour. Plaintiffs' attorney's fees request will be reduced accordingly.

Defendant's final contention is that plaintiffs' overall amount of fees must be reduced by some percentage because they were successful on only a portion of their Individuals with Disabilities Education Act claim presented at the due process hearing. Defendant is correct in noting that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Linda T. v. Rich Lake Area School District, 417 F.3d 704, 708 (7th Cir. 2005) (quoting Hensley, 461 U.S. at 436). Further, "[i]f the plaintiff has achieved only partial success compensating the plaintiff for all hours expended on the litigation may be excessive. In such a situation, the court may adjust the award . . . by simply reducing the overall award to reflect the plaintiff's limited success." Spellan, 59 F.3d at 646 (internal quotation and alteration omitted).

In this case, plaintiffs' litigation stemmed from their claim that under the Individuals with Disabilities Education Act, they were entitled to a reimbursement of the full tuition, that is, the $200 a week they paid for Patrick's all-day, five day a week program at the Little Red Preschool. The administrative law judge's decision, which I upheld, explained that plaintiffs were entitled to only a partial tuition reimbursement, that is, $185 a month, for a part-time, five hour a week program at Little Red. Thus, considering a full monthly

8

reimbursement to be 100% of the relief plaintiffs sought, plaintiffs obtained approximately 23% of the relief requested.  Defendant contends that plaintiffs' attorney fees request should be reduced by the percentage of what they were actually awarded.  Dft.'s Br., dkt. #41, at 6.  However, providing such an automatic reduction is not proper.  Even though success is the most significant factor, the Court of Appeals for the Seventh Circuit "has repeatedly rejected the contention that a district court should look to the percentage of the plaintiff's initial demand actually recovered through [ ] judgment and then mechanically reduce the attorney's fee award by a proportionate amount."  Connolly, 177 F.3d at 597.

Instead, in determining a prevailing party's degree of success, a court should "look at the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation."  Id.  (internal quotation omitted).  Despite plaintiffs' contention that they fully prevailed on their Individuals with Disabilities Education Act claim, it is clear that plaintiffs prevailed only in part by recovering about a quarter of the recovery they initially sought.  With respect to the other two factors, both parties take extreme positions.  I conclude that the answer is found in the middle.

Plaintiffs contend that the significance of the case and the public purpose served by their success have a reach far beyond this case.  They note that their success at the due process hearing resulted in the Wisconsin Department of Public Instruction's decision to

9

change its policy regarding reimbursement of private preschool tuition so that a school district is now required to pay for private preschool tuition if the services required by a disabled student's individualized education program are provided by the preschool. Further, because defendant may have to pay for at least a portion of a disabled preschool-age student's private preschool tuition, defendant has decided to consider implementing a public preschool program or four-year old kindergarten program. However, the decision in plaintiffs' favor does not require that defendant pay for every disabled preschool-age child's tuition to attend a private preschool.

As defendant correctly points out, in upholding the administrative law judge's decision, I explained that "[a] decision that the District has to pay for a portion of P.R.'s attendance at Little Red does not create a requirement that the District has to make such a payment for every disabled preschool-age child. P.R.'s circumstances and his individualized education program are what require the District to pay for a party of his attendance at Little Red." Dkt. #32 at 31. In fact, as noted in the summary judgment opinion, it would have been possible for defendant to have satisfied the Individuals with Disabilities Education Act's least restrictive environment requirement by offering Patrick his required non-disabled peer interaction in a community-based setting other than his parents' requested private preschool. Id. at 28. Therefore, although the significance and public purpose served by plaintiffs' success will extend beyond this case, the reach is not as

10

expansive as plaintiffs contend.

On the other hand, defendant takes too narrow a view of the implications of the decision in this case. Defendant can no longer rely on its previous position that so long as it provided itinerant services to a disabled preschool-age child at a private preschool, it could avoid having to pay the child's private preschool tuition, even though the preschool provided necessary, non-disabled peer interaction. Moreover, as plaintiffs note, the decision has motivated defendant to begin moving toward creating a four-year old kindergarten program to expand the opportunities for inclusive education for both disabled and non-disabled preschoolers. Thus, plaintiffs' success altered defendant's approach to payment for private preschool tuition and will affect other preschool-age children within defendant's boarders.

Reducing plaintiffs' request to one-quarter of the fees they requested solely because they recovered one-quarter of their claim in judgment would not be proper, Connolly, 177 F.3d at 597, but it would be no more proper to give plaintiffs their entire request, Spellan, 59 F.3d at 646. I conclude that the proper decision is to provide plaintiffs with half their requested fees. Plaintiffs recovered a quarter of what they were initially seeking, the administrative law judge's decision provided them with a partial victory on a significant legal issue regarding what defendant was responsible to pay for under the Individuals with Disabilities Education Act and the decision served a public purpose by altering the way defendant approaches paying for private preschool tuition when a disabled preschool-age

11

child needs to be in that setting to satisfy the Individuals with Disabilities Education Act's least restrictive environment requirement. However, plaintiffs failed to persuade the administrative law judge or this court that (1) defendant has to pay for a disabled preschool-age child's full time enrollment in a private preschool when part-time enrollment is enough to provide the child with a free appropriate public education or (2) that non-disabled peer interaction must happen at a private preschool.

Moreover, plaintiffs' request for attorney fees includes hours worked on their unsuccessful appeal from the administrative law judge's decision. Of the 84.1 hours plaintiffs' attorney spent working on this case, approximately 38.7 hours, or 46% of the time, was spent on the appeal. In fact, plaintiffs focused their summary judgment argument on overturning the administrative law judge's decision as opposed to defending it. Plts.' Br., dkt. #25, at 19 ("This court should, therefore, deny [defendant's] motion for summary judgment, and grant the summary judgment motion of Patrick and his parents, and require [defendant] to reimburse Patrick's parents for the entire cost of tuition and registration fees for his attendance at the Little Red Preschool[.]"). Because plaintiffs were entirely unsuccessful on their appeal of the administrative law judge's decision, it would be unreasonable to award them attorney fees for all the work done on appeal.

Nonetheless, plaintiffs' attorney's work on their appeal is unavoidably intertwined with the defense of defendant's appeal. Instead of trying to categorize each unit of time by

12

what portion of the appeal was worked on, it is reasonable to consider plaintiffs' failure on their appeal as a factor in support of reducing their requested amount of fees. Therefore, although plaintiffs were successful on their Individuals with Disabilities Education Act claim, their success was limited and their attorney fee request will be limited accordingly.

In conclusion, plaintiffs' attorney's hourly rate is reduced to $275 an hour and his hours worked are reduced to 80.7 hours to account for time spent communicating with the press. Plaintiffs' attorney's paralegal rate is reduced to $50 an hour. Applying these reductions to plaintiffs' requested amount reduces the fee award to $23,357.70. Further reducing that amount by half because of plaintiffs' limited success at the administrative hearing and on appeal to this court, brings plaintiffs' attorney fees and costs to $11,678.85.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment on attorney fees, dkt. #35, filed by plaintiffs Teresa and Rusty R. is GRANTED, but their requested fees and costs amount is reduced to $11,678.85;

2. The clerk of court is directed to enter judgment DISMISSING plaintiffs' appeal of the administrative law judge's decision, AFFIRMING the administrative law judge's decision and AWARDING plaintiffs $11,678.85 in attorney fees and costs.

Entered this 20th day of May, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge